# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| VIAHART LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>    Defendants. | No. 20-cv-5049<br><br>Hon. Joan H. Lefkow<br><br>Mag. Judge Jeffrey Cummings |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Viahart LLC ("Plaintiff") submits this Memorandum in support of its Ex Parte Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "Ex Parte Motion").

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA"), and contributory infringement against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Amended Complaint, Defendants are manufacturing, promoting, advertising, marketing, distributing, offering for sale, selling, and assisting in the manufacturing and selling of unauthorized and unlicensed counterfeit products, including children's educational toys, using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Counterfeit and Infringing Products"), through various fully

interactive, commercial Internet stores operating under at least the Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores, through which Illinois residents can purchase and have purchased Counterfeit and Infringing Products. Defendants are all working together out of the time city in China and share products, store access, a common manufacturer and exporters. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Indeed, after having been sued in the Judicial District just three years ago, the operators of two of the defendant stores in that case opened new stores and began selling Counterfeit and Infringing Products to U.S. consumers, including consumers located in Illinois. Plaintiff is forced to file this action to combat Defendants' continued counterfeiting and infringement of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit and Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks and Products

Plaintiff is the creator and distributor of the famous BRAIN FLAKES® interlocking plastic disks. Described as "every teacher's favorite 'brain break' activity," Plaintiff originally designed and trademarked the well-renown educational toy set used in classrooms across the country nearly a decade ago. Am. Compl. ¶ 4. Plaintiff has since built the product into an international brand. Described by one toy reviewer as "a revolutionary addition to the world of children's (and adults'!)

construction toys," BRAIN FLAKES®, has been recognized by a number of well-known media, such as the Wall Street Journal® and People.com® and has sold millions. Am. Compl. ¶ 5. BRAIN FLAKES® has also made several recent lists of top toys for kids, including the "Best Building Toys for Kids (The Future Engineers) in 2020" and the "Top 10 STEM Toys of 2019." Am. Compl. ¶ 5.

Plaintiff's products have become enormously popular, driven, in part, by Plaintiff's quality and safety standards, as well as the products' innovative designs. Am. Compl. ¶ 6. Among the purchasing public, genuine Plaintiff's product are instantly recognizable as such and symbolize high quality. Am. Compl. ¶ 6. Plaintiff has registered several of its trademarks with the United States Patent and Trademark Office (collectively, "the Viahart Trademarks"). Am. Compl. ¶ 8; Am. Compl, Exh. 1. Plaintiff incorporates a variety of distinctive marks in the design of their various products. Am. Compl ¶ 8. True and correct copies of Plaintiff's United States Registration Certificates for the Viahart Trademarks are attached to the Declaration of Molson L. Hart ("Hart Declaration") as Exhibit A. The registrations for the Viahart Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *See* Hart Declaration ¶ 6. These registrations constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Viahart Trademarks pursuant to 15 U.S.C. § 1057(b).

### B. Defendants' Unlawful Activities

The success of Plaintiff's brand has resulted in their significant counterfeiting. Hart Declaration ¶ 11. Consequently, Plaintiff has a worldwide anti-counterfeiting program and investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* at ¶¶ 11-12. In recent years, Plaintiff has identified many fully interactive marketplace listings on various e-commerce platforms, including the Defendant Internet Stores, which were

3

offering for sale and selling Counterfeit and Infringing Products to consumers in this Judicial District and throughout the United States. *Id.* at ¶ 12.

In this particular case, two of the Defendant stores in this case were sued in a prior lawsuit by Plaintiff in the Northern District of Illinois in 2016 for selling goods using counterfeit versions of the Viahart Trademarks. *Id.* at ¶ 11. Nevertheless, after resolving that case with Plaintiff, the operators of those stores proceeded to help others open stores, manufacture Counterfeit and Infringing Products, and sell Counterfeit and Infringing Products to consumers in the U.S., including Illinois. *Id.* at ¶ 11.

Further, all of the Defendants are connecting and work in concert to manufacturer, advertise, sell, export, import, ship, and deliver the Counterfeit and Infringing Products. *Id*. at ¶ 16. Notably, because Defendant employ various tactics to hide their identities and evade enforcement efforts, Plaintiff does not know the full scope of the counterfeit operation or all of the persons and companies involved in the operation. *Id.* at 18, Upon learning additional identities and evidence of counterfeiting and infringement during the litigation, Plaintiff will take appropriate steps to amend the Amended Complaint.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Viahart Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Viahart Trademarks, to stop children from using

4

and possibly ingesting toys not in conformity with Plaintiff's safety standards, and to preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can, and likely will, register new online marketplace accounts under new aliases and move any assets to unknow and offshore bank accounts outside the jurisdiction of this Court, thereby escaping all meaningful legal accountability and denying Plaintiff all possible redress. Indeed, Defendants have changed their Store names several times. *See* Hart Declaration at ¶ 15. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through operating or assisting in the operations and selling of Counterfeit and Infringing Products through fully interactive, commercial Defendant Internet Stores. *See* Amended Complaint at ¶¶ 1-2. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill.

Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is directly involved in the commission of tortious acts in Illinois and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiff Will Likely Succeed on the Merits.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiff's Lanham Act and UDTPA claims involve the same elements. *See Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019)*(citing Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 n.8 (7th Cir. 2001)). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, the Viahart Trademarks are distinctive and are registered with the United States Patent and Trademark Office. *See* Hart Declaration at ¶¶ 5-6, Exh. A. The registrations for the Viahart Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* The registrations for the Viahart Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use Viahart Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the Viahart Trademarks, and none of the Defendants are authorized retailers of genuine products. *Id.* at ¶ 13. Thus, Plaintiff satisfies the first element of their Lanham Act claim.

The Seventh Circuit has held that where one produces counterfeit goods in an apparent "attempt to capitalize upon the popularity of another's product," there is a "presumption of a likelihood of confusion." *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D.

Ill. 2019) (quoting *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the Viahart Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that Defendants are selling Counterfeit and Infringing Products that look similar to Plaintiff's genuine products and use counterfeit marks identical to the Viahart Trademarks. See Hart Declaration, Exhs. A-J. Defendants advertise and sell their products to consumers via the Internet (particularly on Amazon), targeting consumers looking for genuine products. Hart Declaration at ¶ 12. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing between Plaintiff's genuine products and the Counterfeit and Infringing Products sold by Defendants. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Plaintiff's products to purchase the Counterfeit and Infringing Products instead. Indeed, Defendants advertise the Counterfeit and Infringing Products using the Viahart Trademarks and confusingly similar variations thereof, using metatags of the Viahart Trademarks, using the same or similar product photos as Plaintiff, and using the Viahart Trademarks in the product listings. *Id.* at ¶¶ 13, 22. Evidence of actual consumer confusion is not

required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiff products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

      **C.    There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief.**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods*." Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979). Accordingly, the Seventh Circuit therefore applies a presumption of irreparable harm in trademark infringement suits. *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 952 (N.D. Ill. 2018) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11, 16 (7th Cir. 1992)).

    Defendants' unauthorized use of the Viahart Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's

reputations, loss of exclusivity, and loss of future sales. Hart Declaration at ¶¶ 19-24. The extent of the harm to Plaintiff's reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

The need for an immediate restraining order is especially compelling in this case, where the appearance of Counterfeit and Infringing Products on Amazon has ballooned over the two months, with one Defendant likely supply the Counterfeit and Infringing Products with the help of the other Defendants. Hart Declaration at ¶ 25. Because Plaintiff sells children's toys, the threat that children will use and possibly ingest products that do not meet Plaintiff's high standards, when consumers are misled to believe that they do, the need for an immediate restrain is paramount for both the consumer and Plaintiff's reputation. *Id.*

**D.  The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed*

*Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted); *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001)(recognizing that in weighing balancing of harms, "the court excludes the burden [the defendants] voluntarily assumed by proceeding in the face of a known risk"). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit and Infringing Products for years and have recently directly aided and assisted the expansion of such counterfeiting operations. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and/or endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Viahart Trademarks Is Appropriate.

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Viahart Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to Viahart Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Viahart Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of the scope and volume of Defendants' counterfeiting operation, nor how many other Defendant Internet Stores are used to sell and distribute the Counterfeit and Infringing Products. Courts ordinarily authorize immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an ex parte restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit and Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants are highly likely to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Hart Declaration at ¶ 18. Specifically, Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. *Id.*

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *See Grupo Mexicano*, 527 U.S. at 325 (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v.*

*Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff's Amended Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) (citing *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013)).

Plaintiff has shown a strong likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to other unidentifiable or offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Plaintiff is Entitled to Expedited Discovery.

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation

13

omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations, as well as the IP addresses Defendants use to login and access their Stores and Accounts. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts and account users so that the proper Defendants can be discovered and their accounts frozen is necessary to ensure that these activities will be contained and constitutes good cause. *See, e.g.*, *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00), the amount courts in this District ordinary require plaintiffs to post in like cases. *See Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (collecting cases require $10,000 bond for large-scale counterfeit cases involving hundreds of defendants); *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting and infringing operations are irreparably harming Plaintiff's business, its highly reputable BRAIN FLAKES® and VIAHART® brands, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit and Infringing Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit and Infringing Products have been manufactured by or emanate from Plaintiff, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Date: August 27, 2020                                   Respectfully submitted,

/S/DALIAH SAPER
DALIAH SAPER (NO. 6283932)
MATT GROTHOUSE
BRANDON BEYMER
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 60654
CHICAGO, ILLINOIS 60654
(312) 527-4100
DS@SAPERLAW.COM

*Counsel for Plaintiff Viahart LLC*